UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

KIM HART, et al.,

    Plaintiffs,

    v.

RITA HARPER, et al.,

    Defendants.

Case No. 2:24-CV-00019-GSL-JEM

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss. [DE 23]. For the following reasons, the Court GRANTS Defendants' motion.

**A. BACKGROUND**

On January 10, 2024, Plaintiffs filed this action in federal court, alleging state claims of conversion, fraud, and breach of fiduciary duty. [DE 2]. The claims stem from the facts of another case in the Lake County Superior Court of Indiana: *In the Matter of Guardianship of Marion Mack*, Case No. 45D02-2111-GU-000271 ("Guardianship case"). [DE 2, ¶ 1]; [DE 35, Exhibit A]; *see* [DE 23, ¶ 7]. In the Guardianship case, Defendants Sherrod and Harper were appointed Guardians over Marion Mack. [DE 2, ¶ 2]; [DE 23, ¶ 7–8]. Less than a year later, Mr. Mack died. [*Id.* at ¶ 9]. Defendants Sherrod and Harper filed their Final Report and Petition to Terminate Guardianship on May 21, 2023. [*Id.* at ¶ 10]. The next day, the court approved this report and terminated the guardianship. [*Id.*]; [DE 35, page 69]. On June 14, 2023, Plaintiff Hart filed a Motion to Set Aside this order. [DE 23, ¶ 11]. The court rescinded its order and ordered the parties to appear for a show cause hearing, apparently construing Plaintiff's motion as a

petition for contempt. [1] [*Id.* at ¶ 12]; [DE 35, page 71]. On August 11, 2023, the Guardianship court denied the petition for contempt and terminated the guardianship. [DE 23, ¶ 13]; [DE 35, page 85].

In the instant case, Plaintiffs allege misconduct by Defendants during their time as Guardians over Mr. Mack. [DE 2, ¶ 1–2]. Specifically, Plaintiffs assert that Defendants abused their position as guardians over Mr. Mack's assets, improperly siphoned funds from these assets, and changed the beneficiary status of these assets. [*Id.*]. The Complaint lists four assets that are at issue: a Fidelity Investment 401(k), a State Farm Life Insurance policy, a JP Morgan Chase CD account, and a Genworth 401(k). [*Id.* at ¶¶ 4, 15]. In response, Defendants filed the instant Motion to Dismiss, arguing that Plaintiffs failed to state a claim for conversion, fraud, and breach of fiduciary duty. [2] [DE 23]. The Court will address each of these arguments.

## B. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a pleading must contain sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged."

---

[1] Plaintiffs describe the June 16 Guardianship court order as "direct[ing] [Defendants] to cure the self dealing." [DE 2, ¶ 2]. Further, in the briefing, Plaintiffs suggest that the order provided substantive directives to the guardians about Mr. Mack's assets. [DE 29, ¶ 8] ("On June 16, 2023, the Lake Superior Court issued an order requiring Rita and Janet to return the beneficiary designations on Mr. Mack's accounts to the status quo before they were appointed as guardians."). This is a substantial mischaracterization. The June 16 order—only a single sentence—merely shows that the Guardianship court vacated its prior judgment pending another hearing between the parties and construed Plaintiffs motion to vacate as a petition for contempt against Defendants Sherrod and Harper. Suggesting that the June 16 order directed Defendants Sherrod and Harper to do anything with regard to the guardianship, beyond appear in court for a hearing, is not supported by the plain language of the order or by the transcript of the subsequent hearing. [DE 35, pages 71, 74–83].

[2] Defendants' Motion to Dismiss also raises several other arguments relating to Plaintiff Goldman and Defendant Harper. However, the Court's analysis on Defendant's Rule 12(b)(6) arguments is dispositive against all the claims and parties. Therefore, the Court will not address the other arguments raised by Defendants.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

### C. DISCUSSION

#### 1) Claim for Conversion

Under Count 1 of the Complaint, Plaintiffs assert that Defendants are liable for conversion for alleged misconduct by Defendants during their time as Guardians of Mr. Mack. [DE 2, pages 4–5]. This alleged misconduct includes "improperly changing beneficiary designations and withdrawing funds from [Mr. Mack's] accounts for [Defendants'] own benefit . . . unlawfully interfer[ing] with [Plaintiff Hart's] expected inheritance." [DE 29, ¶ 34]. Defendants argue that Plaintiff Hart lacked a vested interest in any of the accounts at issue and, thus, failed to state a claim for conversion. [DE 23, ¶¶ 42–44].

Under Indiana law, a person commits criminal conversion when that person "knowingly or intentionally exerts unauthorized control over property of another person[.]" *Matter of Gabriel*, 120 N.E.3d 189, 190 (Ind. 2019) (citing Ind. Code Ann. § 35-43-4-3). A party injured by criminal conversion may bring a civil action to recover any pecuniary loss resulting from the conversion. *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008) (citing *Sam & Mac, Inc. v. Treat*, 783 N.E.2d 760, 766 (Ind. Ct. App. 2003)). In such an action, the injured party must prove all the elements of criminal conversion, including criminal intent. *Id.*

To successfully recover in a civil action for conversion, the claimant need not show a criminal conviction occurred. *Id.*

Plaintiffs' claim fails because it does not plead that Defendants' alleged misconduct involved any property belonging to them. Plaintiffs argue that Defendants interfered with Plaintiff Hart's "expected inheritance." However, Plaintiffs have not shown that Plaintiff Hart had a vested interest in any of the assets at the time of the alleged misconduct. *See Bowers v. Kushnick*, 774 N.E.2d 884, 886 (Ind. 2002) ("The interest of an insurance policy beneficiary vests at the time of the insured's death."). So, accepting all the facts in the Complaint as true, Defendants' alleged misconduct did not affect any of Plaintiffs' property.

In the Complaint, Plaintiffs assert a property interest that is based solely on Plaintiff Hart's status as a beneficiary of the assets at the time of the alleged conduct. [DE 29, ¶ 34] ("[A] legally cognizable interest in ensuring that the accounts . . . would pass to her upon Mr. Mack's death . . . ."). But a prior, one-time status as a beneficiary, is insufficient as a basis for asserting a protectable property interest. Discussing the status of a beneficiary to a life insurance policy, the Indiana Supreme Court has stated:

> Under the law of Indiana, the beneficiary-appellee had a mere expectancy of possibility. It was not until her former husband died, without changing the beneficiary, that her interest in, or right to, the proceeds of the policy vested. Up until the time of his death[,] the deceased . . . could have terminated the mere expectancy of [beneficiary-appellee] . . . . The mere expectancy that arose because appellee was named as beneficiary was not a property right prior to the demise of the named insured. Only after the death of the named insured did her expectancy ripen into a vested right to the proceeds of the policy.

*Metro. Life Ins. Co. v. Tallent*, 445 N.E.2d 990, 992 (Ind. 1983) (quoting *Wolf v. Wolf*, 259 N.E.2d 96, 98 (Ind. 1970)). *See Bronson v. Nw. Mut. Life Ins. Co.*, 129 N.E. 636, 639 (1921) ("[T]he original beneficiary acquires only a defeasible vested interest in the policy . . . until after the death of the insured."). Similarly, here, Plaintiff Hart had only a "mere expectancy" in Mr.

Mack's assets as a named beneficiary, but she had no property right in the assets while he was alive. Plaintiffs do not provide any legal authority to support otherwise. Therefore, Plaintiffs fail to meet the pleading requirements for a conversion claim because Defendant's alleged misconduct did not affect any property belonging to Plaintiffs.

Plaintiffs' conversion claim fails for the additional reason that it does not allege the requisite intent. A claim for civil conversion has an essential element of criminal intent. *Imel v. DC Constr. Servs., Inc.*, No. 19-CV-00634, 2022 WL 293723 (S.D. Ind. Feb. 1, 2022) (citing *JET Credit Union*, 879 N.E.2d at 597) ("The same elements apply to both criminal and civil conversion . . . ."). To properly satisfy this element, "a plaintiff must show that: (1) the defendant's control over the property was unauthorized; and (2) the defendant was aware of a high probability that the control was unauthorized." *Young v. Smith*, 16-CV-03395, 2017 WL 3581656, at *8 (S.D. Ind. Aug. 17, 2017); *see Schrenker v. State*, 919 N.E.2d 1188, 1193-94 (Ind. Ct. App. 2010).

Here, Plaintiffs plead that Defendants' alleged actions were unauthorized because they "never received Court [p]ermission for their actions." [DE 2, ¶ 24]. Accepting this as true, the Complaint still lacks any facts alleging that Defendants were "aware of a high probability" that their actions were unauthorized. This "high probability" is generally not found in cases where a defendant has a good faith belief in his entitlement to the property or has a separate legal basis to exercise control over it. *Kruse, Inc. v. Hogan*, 10-CV-014 JD, 2015 WL 274152, at *4 (N.D. Ind. Jan. 22, 2015). Defendants were court-designated Guardians of Mr. Mack, ostensibly giving them a legal basis and reason to believe they had authority and control over Mr. Mack's assets. [DE 2, ¶ 1]. While Plaintiffs allege that Defendants "acted in their own self-interest," they do not allege any facts to support this

5

conclusory statement. [*Id.* at ¶ 2]. Without alleging facts that lead to an inference that Defendants acted with the requisite *mens rea*, Plaintiffs fail to plead a claim for conversion. *See Matter of Gabriel*, 120 N.E.3d 189, 190 (Ind. 2019) ("[E]ven assuming Respondent's exercise of control over guardianship funds was unauthorized, Respondent reasonably believed under the circumstances that her actions were authorized . . . . And from this finding we conclude . . . that the Commission failed to prove Respondent acted with the requisite *mens rea* to support a finding of criminal conversion.").

### 2) Claim for Fraud

Under Count 2 of the Complaint, Plaintiffs assert that Defendants are liable for fraud for alleged self-dealing by Defendants during their time as Guardians of Mr. Mack's estate. [DE 2, pages 5–6]. Plaintiffs' theory of liability for fraud requires them to demonstrate Defendants made a "false or misleading statement" or created a "false impression in another person." [DE 2, ¶ 38] (listing the elements from Indiana Code § 35-43-5-4(a)(1)). However, the Complaint does not allege any facts related to either of those elements. In their response to the instant motion, Plaintiffs argue that "the Complaint does allege misrepresentations of existing fact" but cites to only two paragraphs in the Complaint, neither containing any allegations of misrepresentations or of other falsities. [DE 29, ¶ 35] (citing DE 2, ¶¶ 38–39). Consequently, Plaintiffs' Complaint falls short of the pleading requirements for a fraud claim.[3]

---

[3] Count 2 is a fraud-related claim that must be pled with specificity. *Se. Fin. Credit Union v. Coll. Network, Inc.*, No. 15-CV-01507, 2016 WL 1187731, at *5 (S.D. Ind. Mar. 28, 2016) (applying Fed. R. Civ. P. 9 to claims brought under Indiana Code § 35-43-5-4). Under this heightened pleading standard, Plaintiffs need to plead the "who, what, where and how" of the alleged fraudulent conduct. *See id.* Plaintiffs fail to do so. However, since this claim already falls short of the Rule 12(b)(6) pleading requirement, it is not necessary to conduct an analysis under this heightened standard.

### 3) Claim for Breach of Fiduciary Duty

Under Count 3 of the Complaint, Plaintiffs assert that Defendants are liable for breach of fiduciary duty for alleged self-dealing by Defendants during their time as Guardians of Mr. Mack. [DE 2, pages 6–7]. "A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Farmers Elevator Co. of Oakville v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010). In the Complaint, Plaintiffs asserts a fiduciary relationship between Defendants and Mr. Mack, not Plaintiff Hart. [DE 2, ¶ 47]. Because the Complaint fails to assert a fiduciary relationship between Defendants and Plaintiff Hart, Plaintiffs' claim for breach of fiduciary duty fails.

Alternatively, in their response to the instant motion, Plaintiffs argues a fiduciary duty exists between Defendants and Plaintiff Hart based off her prior status as a beneficiary to Mr. Mack's assets. [DE 2, ¶ 47]; [DE 29, ¶ 36]. However, Plaintiff Hart's "mere expectancy in Mr. Mack's assets does not create a fiduciary duty between her and Defendants. *See Metro. Life*, 445 N.E.2d at 922 ("Under the law of Indiana, the beneficiary-appellee had a mere expectancy of possibility . . . ."); *see also Bronson v. Nw. Mut. Life Ins. Co.*, 129 N.E. 636, 639 (1921) ("[T]he original beneficiary acquires only a defeasible vested interest in the policy . . . until after the death of the insured."). Plaintiffs do not provide any arguments or authority to support their contention.[4] For this reason, Plaintiffs' claim for breach of fiduciary duty also fails.

---

[4] Plaintiff cites *In re Guardianship of Hollenga*, 852 N.E.2d 933, 938–39 (Ind. Ct. App. 2006) to support the contention that Defendants owed a fiduciary duty to the beneficiaries of Mr. Mack's assets. However, as Defendants noted in their Reply, this case is inapposite to the issues at hand and irrelevant to Plaintiff's arguments. *See* [DE 32, ¶ 41–42].

## **CONCLUSION**

For these reasons, Defendants' Motion to Dismiss [DE 23] is GRANTED without prejudice. The Court DIRECTS the Clerk of Court to DISMISS this case and enter judgment accordingly.

SO ORDERED.

ENTERED: February 7, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court